IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In Re: | Chapter 7 |
|---|---|
| PAUL AND NANCY SCHREITER, | |
| Debtors. | Case No. 05-27479 |
| | Adv. No. 06-00795 |
| UNITED STATES TRUSTEE, | MEMORANDUM DECISION |
| Plaintiff, | (Opinion to Post) |
| vs. | |
| PAUL SCHREITER, | |
| Defendant. | |

## **I. Introduction**

The Plaintiff United States Trustee ("U.S. Trustee") commenced an adversary proceeding against Paul Schreiter, the Defendant and Debtor herein, on September 1, 2006, to determine whether the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3). The Defendant filed an Answer on October 2, 2006. The Court conducted various pre-trial hearings in the adversary proceeding, and a trial was held on March 7, 2006. At the conclusion of the trial, the U.S. Trustee requested an opportunity to submit post-trial briefing. The Court granted the request, allowing the U.S. Trustee and the Defendant to file and serve

1

post-trial memoranda, and thereafter this matter was under advisement.

This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, incorporated as Bank. R. P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334, 157 (West 2007).

## **II. Factual Discussion**

The Defendant filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 2005. His wife, Nancy Schreiter, is not a defendant in this matter. The U.S. Trustee seeks to have the Defendant's discharge denied because of his failure to keep adequate books and records from which the Defendant's "financial condition or business transactions might be ascertained," unless the Defendant's failure to maintain such records "was justified under all of the circumstances of the case."[1]

The Defendant is well educated, having graduated from college and obtained his doctorate in dentistry, and was licensed as a dentist in Arizona. He operated his own dental practice in Flagstaff, Arizona from approximately 1990 until 1997. The Defendant maintained books and records, as to his dental practice, for a number of years, having filed his tax returns for the years preceding 2003.

The Defendant apparently encountered problems when he became a principal in Dr. Paul Smile Design, L.L.C., which employed him in 2004 and 2005. The Defendant also became associated with various other start-up operations at the same time. At the time of trial, the Defendant testified that he undertook the practice of dentistry, but allowed the other principal in Dr. Paul Smile Design, Lenn Friedman, to maintain the books and records of the Defendant's various ventures. The Defendant, for instance, stated that when a new patient came to the Dr. Paul Smile Design practice, he met with the patient to determine what services the patient required. The Defendant then prepared a plan, which outlined the dental services that would

---

**1.** 11 U.S.C. §727(a)(3).

2

Case 2:06-ap-00795-SSC    Doc 24    Filed 06/19/07    Entered 06/19/07 09:41:21    Desc
Main Document    Page 2 of 10

take place over a number of months, or perhaps longer. The Defendant then quoted the patient the fee to be paid for the dental services. However, on cross examination, the Defendant conceded that the patient may have paid for the dental services "up front" before he started the treatment plan or that dental insurance may have paid for all or a portion of the services to be rendered. The Defendant had no reasonable explanation for what happened to the fees paid by the patients for such treatment plans. The Defendant also could not explain what portion of the fees he received for such services. The Defendant also was uncertain to what extent patients had paid for a treatment plan for which no services were rendered.

The Defendant conceded that although he was a principal of the Dr. Paul Smile Design practice and other related organizations, he did not keep separate books and records as to the compensation that he received from his various ventures. The Defendant had no credible explanation for his failure to keep books and records for 2003, 2004, and 2005, conceding that at least the Schedules that he filed with the Bankruptcy Court reflected that his various dental practices had received a substantial amount of income from patients or dental insurance for the Defendant's treatment plans. The Defendant testified that ultimately Mr. Friedman absconded with substantial funds received by the dental practice and destroyed the business records or took them with him. The Defendant was forced to leave his dental practice. A number of complaints were lodged with the dental board, and the Defendant testified that rather than contest what had been alleged by former patients, he would surrender his license to practice dentistry.

The Defendant testified that he had no idea what compensation he made in 2003, 2004, or 2005. The Defendant has failed to file tax returns for 2003, 2004, and 2005. All required Schedules and Statements were filed by the Defendant and Nancy Schreiter on November 1, 2005, and were subsequently amended.[2] On the Statement of Financial Affairs, Question 1, the Defendant stated that his income from January 1, 2005, through the filing of the petition (October 14, 2005) was $45,400, yet he presented no records, or other evidence, at the

---

**2.** See Docket Entry No.'s 12, 42; U.S. Trustee's Exhibit 2.

3

time of trial to support this statement made under penalty of perjury.[3] The Defendant presented no records, or other evidence, at the time of trial to establish what he earned in 2003, 2004 or 2005.

The Defendant also has no personal financial records. As noted above, he has not filed income tax returns for several years. He has no records to establish what payments were made to creditors in the 90 days preceding the filing of his bankruptcy petition, and he does not have or use a check register. The Defendant has no records to establish what is owed to his secured creditors, although the Statement of Financial Affairs, at Question 3, requires that he provide such information to the Court, creditors, and interested parties.

The Defendant also lacks records establishing what is owed to many of his unsecured creditors, most of whom were patients of his practice. He does not have addresses for some of these creditors, and, as noted above, has no knowledge regarding, or records establishing, what patients of the dental practice paid or what they might still be owed for services never rendered.[4] As noted, some of these creditors who were patients of the Defendant's practice paid in full for services never rendered.

The Defendant provided no information at the time of trial on any of these issues although he had ample time to gather said information. For instance, he conceded at trial that he could have contacted his financial institutions and obtained information as to when deposits were made to his account reflecting his wages or other compensation. The Defendant could have taken other steps to reconstruct his financial records, yet he took no action.

Although the Defendant attempted to place the blame for a failure to keep the records of the various businesses or dental practices with which he was associated on the principal of the practice or even on some of the employees of the practice with whom he worked, the Defendant was not credible. The Defendant is a well educated individual who certainly had

---

**3.** See Docket Entry. No. 12, page 16.

**4.** See Dkt. Entry No. 12, 42; U.S. Trustee's Exhibits 2, 3.

4

the ability to keep copies of the business and the personal records that were important to reflect his financial situation. In fact, the Defendant admitted that he had filed tax returns for a number of years up until 2002. He had no credible explanation as to why he could not retain the appropriate documentation to file his tax returns for the 2003, 2004, and 2005 taxable years.

### III. Legal Discussion

Under 11 U.S.C. § 727(a)(3),[5] a court may refuse to grant a debtor's discharge if the debtor has no "books, documents, records, and papers,[6] from which the debtor's financial condition or business transactions might be ascertained." "Complete disclosure is in every case a condition precedent to the granting of the discharge," and if such disclosure is not possible without preserving books or records, a debtor cannot invoke the protection of the Bankruptcy Court without justifying the failure to retain the necessary information. Meridian Bank v. Alten, 958 F.2d 1226, 1230-31 (3rd Cir. 1992). A party objecting to a debtor's discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. In re Cox, 41 F.3d 1294, 1296 (9th Cir. 1994). Thereafter, the burden shifts to the debtor to prove justification. Id. "Honesty is not enough; the law demands as the condition of a discharge either that the bankrupt shall produce such records as are customarily kept by a person doing the same kind of business, or that he shall satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them." Meridian Bank, 958 F.2d at 1232 (quoting

---

**5.** 11 U.S.C. § 727(a)(3) requires the court to grant the debtor a discharge, unless:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers rom which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

**6.** These items are referred to collectively herein by the terms "records" or "books and records."

5

White v. Schoenfeld, 117 F.2d 131, 132 (2nd Cir. 1941)).

In determining whether a debtor's failure to keep books and records was justified, the Court must determine whether a reasonable person would have acted similarly, taking into consideration education, experience, and sophistication; the volume or complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be fairly considered. Meridian Bank, 958 F.2d at 1231. A sophisticated business person is generally held to a high standard in record keeping. Id.

In the decision of In re Cox, the Ninth Circuit examined whether a debtor's reliance on another to keep financial records was sufficient justification for the debtor's failure to keep or preserve any of her own records. 904 F.2d 1399 (9th Cir. 1990). The debtor, Ms. Cox, was a homemaker who relied on her husband to support her and to keep books or records. Ms. Cox signed documents with her husband to become a co-owner of many parcels of real estate, a partner in two or more partnerships, and a director or officer in several corporations, although she had no daily involvement in the various enterprises. After Ms. Cox's husband absconded with the funds from the real estate ventures, an involuntary bankruptcy was filed against her. The trustee objected to Ms. Cox's discharge pursuant to 11 U.S.C. § 727(a)(3). The bankruptcy court held that although Ms. Cox was partly a victim of her husband's actions, she had a duty to keep records. The Bankruptcy Appellate Panel affirmed, and the Ninth Circuit affirmed, in part. It held that although Ms. Cox was not actively involved in her husband's business, she shared his duty to keep records. Id. at 1402. However, it speculated that where business partners were married, and one had significantly more business expertise than the other, reliance of one on the other to keep records might be justified. Id. at 1403. It remanded for the bankruptcy court to consider whether Ms. Cox's reliance was justified, in light of: 1.) Ms. Cox's intelligence and educational background; 2.) Her business experience; 3.) The extent of her involvement in the business matters for which discharge was sought; 4.) Her knowledge as to whether her husband was actually keeping records; 5.) The nature of the marital relationship; and 6.) Any record

6

keeping or inquiry duties imposed on Ms. Cox by state law. Id. at n. 5.

In this case, the U.S. Trustee carried her initial burden of showing that the Defendant failed to keep adequate books and records; the Defendant never disputed his lack of records. Although the Defendant had ample time to track down, copy, and reconstruct his business and personal records, he chose not to take the appropriate action. By the time of trial, the Defendant could not present sufficient written evidence to "enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." See In re Horton, 621 F.2d 968, 971 (9th Cir. 1980). The Defendant was able to produce a list of patients and cost estimates given for their dental work; however, he had no documentation or knowledge regarding the amount each patient actually paid or might still be owed for services never rendered.[7] The Defendant's failure to keep books and records has made it impossible for his creditors to ascertain the Defendant's financial condition, see id., and in many instances, to have notice of his bankruptcy proceeding at all.[8] Although this failure to preserve any books or records would normally preclude the Defendant from receiving a discharge, the Defendant alleges that he has a valid justification excuse.

The Defendant argues that he was justified in failing to keep books and records for his dental practice because he relied on his business partner, Mr. Friedman, to do so. The Defendant testified at trial that the business duties were delegated between the partners: the Defendant was Dr. Paul Smile Design's primary dentist, and Mr. Friedman took care of the business aspects of the practice. When Mr. Friedman absconded with the funds of the dental practice, the Defendant stated that he was left with no books or records, and was unable to access

---

**7.** See Amended Schedule F, listing patient-creditors with amounts owing set forth as "Treatment Plan estimate/Otherwise unknown;" U.S. Trustee's Exhibit 3.

**8.** See Id., listing a number of patient-creditors with addresses "unknown;" U.S. Trustee's Exhibit 3.

7

any records inside the business premises.[9] The Court did not find the Defendant's testimony credible; but even if it had, the Defendant was not justified in relying solely on Mr. Friedman to keep the books and records. <u>See</u> <u>In re Cox</u>, 904 F.2d 1402, 1403, n.5. Rather, given the Defendant's substantial involvement in the dental practice as a principal, the Defendant shared the duty to keep the books and records of the dental practice or practices. <u>See</u> <u>Id.</u> at 1402.

The Defendant's reliance on Mr. Friedman was also not justified because the Defendant had extensive business experience. <u>See</u> <u>In re Cox</u>, 904 F.2d at 1402. He had owned his own dental practice for many years, and had worked for several other dental practices prior to working at Dr. Paul Smile Design. He conceded at trial that he knew he was required by law to keep certain records, and file certain tax forms. The Defendant testified that he had kept records, such as articles of incorporation, for other corporations he owned, some in conjunction with Mr. Friedman, that are not at issue here. The Defendant was heavily involved in Dr. Paul Smile Design on a day-to-day basis. Yet despite his business acumen; knowledge of the importance of record keeping; high level of educational attainment; daily involvement in the business; shared duty to keep records; and apparent ability to keep records, the Defendant testified that he did not keep records for his dental practice and never checked to ensure that Mr. Friedman was doing so. <u>See</u> <u>In re Cox</u>, 904 F.2d 1402. The Defendant testified that he did not know whether any financial statements were ever prepared for the business; what the business's revenue was for any operating quarter; what happened to the money paid to the practice by patients; or even what his actual salary was. The Court does not find the Defendant's justification excuse to be credible.

Furthermore, unlike the debtor in <u>In re Cox</u>, the Defendant was not married to his business partner. <u>See</u> 904 F.2d at 1403. Thus, apart from the Defendant's assertions that he relied on Mr. Friedman to keep his business records, the Defendant's failure to keep any

---

**9.** At trial, the Defendant testified that he was later able to access restored data on a portion of a hard drive, from which he derived the list of patients and Treatment Plan estimates on his Amended Schedule F.

8

personal financial records remains utterly unexplained. Although the Defendant had previously employed certified public accountants to assist with his personal finances, and regularly filed income tax returns, he abruptly ceased to do so after 2002. The Defendant testified that he received no documentation from Dr. Paul Smile Design regarding his earnings, was paid irregularly by the practice, and was behind on personal bills, facing possible eviction and foreclosure at times. The Defendant is a highly educated, articulate person. However, it seems that the Defendant never questioned Mr. Friedman regarding the business's financial condition or its failure to provide him with any personal payroll information. Even at trial, the Defendant failed to present any recent bank or other records pertaining to his personal financial condition from which his yearly income, at least, could have been deduced. The Defendant did not undertake to keep even minimal records. See Meridian Bank, 958 F.2d at 1231 (requiring a higher standard of record-keeping for sophisticated parties). The Defendant has not carried his burden of proving justification for his lack of financial records.

## IV. Conclusion

Although the Defendant argues that his failure to keep books and records was a mistake, a Court does not examine intent in determining whether a debtor has preserved adequate books and records of his financial affairs. Rather, the Court must determine whether creditors could ascertain the debtor's financial condition and material business transactions from the records the Defendant presents. In re Cox, 41 F.3d 1294, 1296 (9th Cir. 1994); Meridian Bank v. Alten, 958 F.2d 1226, 1230-31 (3rd Cir. 1992). In this case, the Defendant has no books or records, relating to his personal life or his business practice, from which creditors could reasonably determine his financial situation or his material business transactions. As the Defendant has presented no plausible justification for this failure to preserve such necessary information, the Court concludes that the Defendant's discharge must be denied pursuant to 11 U.S.C. § 727(a)(3). The Court will execute a separate order incorporating this decision.

Case 2:06-ap-00795-SSC    Doc 24    Filed 06/19/07    Entered 06/19/07 09:41:21    Desc
Main Document    Page 9 of 10

1
2
3       DATED this 19th day of June, 2007.
4
5                                    _____
                                     Honorable Sarah Sharer Curley
6                                    U. S. Bankruptcy Judge
7
  BNC to Notice
8

10